UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW HOPKINS,<br><br>    Plaintiff,<br><br>  v.<br><br>PS BUSINESS PARKS, INC., RONALD L. HAVNER, JR., STEPHEN W. WILSON, JOSEPH D. RUSSELL, JR., MARIA R. HAWTHORNE, JENNIFER HOLDEN DUNBAR, M. CHRISTIAN MITCHELL, IRENE H. OH, KRISTY M. PIPES, GARY E. PRUITT, ROBERT S. ROLL, and PETER SCHULTZ,<br><br>    Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.  This action stems from a proposed transaction announced on April 25, 2022 (the "Proposed Transaction"), pursuant to which PS Business Parks, Inc. ("PS" or the "Company") will be acquired by affiliates of Blackstone Real Estate.

2.  On April 24, 2022, PS's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with PS Business Parks, L.P., Sequoia Parent LP, Sequoia Merger Sub I LLC, and Sequoia Merger Sub II LLC. Pursuant to the terms of the Merger Agreement, PS's stockholders will receive $187.50 in cash for each share of PS common stock they own.

3. On May 19, 2022, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of PPS common stock.

9. Defendant PS is a Maryland corporation and a party to the Merger Agreement. PS's common stock is traded on the New York Stock Exchange under the ticker symbol "PSB."

10. Defendant Ronald L. Havner, Jr. is Chairperson of the Board of PS and Public Storage ("Parent"), the parent company of PS.

11. Defendant Stephen W. Wilson is President, Chief Executive Officer, and a director of the Company.

12. Defendant Joseph D. Russell, Jr. is President and Chief Executive Officer of Parent, and a director of the Company.

13. Defendant Marie R. Hawthorne is Interim Chief Operating Officer and a director of the Company.

14. Defendant Jennifer Holden Dunbar is a director of the Company.

15. Defendant M. Christian Mitchell is a director of the Company.

16. Defendant Irene H. Oh is a director of the Company.

17. Defendant Kristy M. Pipes is a director of the Company.

18. Defendant Gary E. Pruitt is a director of the Company.

19. Defendant Robert S. Rollo is a director of the Company.

20. Defendant Peter Schultz is a director of the Company.

21. The defendants identified in paragraphs 10 through 20 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

22. PS is a REIT that acquires, develops, owns, and operates commercial properties, predominantly multi-tenant industrial, industrial-flex, and low-rise suburban office space.

23. The Company's 96 properties serve approximately 4,900 tenants in 27 million square feet of space as of March 30, 2022.

24. On April 24, 2022, PS's Board caused the Company to enter into the Merger Agreement.

25. Pursuant to the terms of the Merger Agreement, PS's stockholders will receive $187.50 in cash per share.

26. According to the press release announcing the Proposed Transaction:

PS Business Parks, Inc. (NYSE:PSB) ("PSB" or the "Company") and Blackstone (NYSE:BX) today announced that they have entered into a definitive agreement under which affiliates of Blackstone Real Estate ("Blackstone") will acquire all outstanding shares of common stock of PSB for $187.50 per share in an all-cash transaction valued at approximately $7.6 billion, including transaction expenses. The purchase price represents a premium of approximately 15% to the volume weighted average share price over the last 60 days.

Under the terms of the agreement, which has been unanimously approved by PSB's Board of Directors, Blackstone will acquire PSB's 27 million square foot portfolio of industrial, business park, traditional office, and multifamily properties located primarily in California, Miami, Texas and Northern Virginia. . . .

Transaction Details

The transaction is expected to close in the third quarter of 2022, subject to approval by PSB's stockholders and other customary closing conditions. The merger agreement includes a "go-shop" period that will expire 30 days from today on May 25, 2022, which permits PSB and its representatives to actively solicit and consider alternative acquisition proposals to acquire PSB. PSB has the right to terminate the definitive merger agreement with Blackstone to enter into a superior proposal, subject to the payment of a termination fee and certain other terms and conditions of the definitive merger agreement. There can be no assurance that this process will result in a superior proposal, and PSB does not intend to disclose developments with respect to the go-shop process unless and until it determines such disclosure is appropriate or is otherwise required.

PSB's three outstanding series of preferred stock, and associated depositary shares, will remain outstanding in accordance with their terms following the closing. We currently intend to continue to have the depositary shares representing our preferred stock listed on the NYSE with public reporting so long as there is at least $75 million aggregate liquidation value of preferred stock outstanding.

Public Storage (NYSE:PSA), which holds approximately 25.9% of the outstanding shares of PSB common stock, has agreed to vote its shares in favor of the transaction, subject to the terms of a support agreement between Public Storage, the Company and an affiliate of Blackstone, which support agreement will

4

terminate automatically upon the termination of the merger agreement, including in connection with a termination of the merger agreement by PSB to enter into a superior proposal. The transaction will also include the acquisition of Public Storage's limited partner equity interests in PSB's operating partnership at the same per unit price of $187.50.

From the date of the merger agreement through the closing of the transaction, PSB may declare and pay regular, quarterly cash distributions to holders of its common stock and to holders of its operating partnership's units, in an amount of up to $1.05 per share or unit, including a pro rata distribution in respect of any stub period. Additionally, PSB is permitted to declare and pay regular quarterly dividends on its shares of preferred stock. . . .

Advisors

Simpson Thacher & Bartlett LLP is serving as Blackstone's legal counsel. J.P. Morgan Securities LLC is acting as lead financial advisor to PSB and provided a fairness opinion to the PSB board of directors in connection with the transaction. Eastdil Secured is acting as real estate advisor to PSB and is also acting as a co-financial advisor to PSB. Wachtell, Lipton, Rosen & Katz is serving as PSB's legal advisor.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

27.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

28.     As set forth below, the Proxy Statement omits material information.

29.     First, the Proxy Statement omits material information regarding the Company's financial projections.

30.     The Proxy Statement fails to disclose: (i) all line items used to calculate the projections; and (ii) a reconciliation of all non-GAAP to GAAP metrics

31.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

5

32. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan").

33. With respect to J.P. Morgan's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the terminal values of the Company; and (ii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates used in the analysis.

34. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

35. Third, the Proxy Statement fails to disclose the terms of Eastdil Secured's ("Eastdil") engagement, including: (i) the amount of compensation Eastdil has received or will receive in connection with its engagement; (ii) the amount of Eastdil's compensation that is contingent upon the consummation of the Proposed Transaction; (iii) whether Eastdil has performed past services for any parties to the Merger Agreement or their affiliates; (iv) the timing and nature of such services; and (v) the amount of compensation received by Eastdil for providing such services.

36. Fourth, the Proxy Statement fails to disclose whether the Company entered into any nondisclosure agreements that contained standstill and/or "don't ask, don't waive" provisions.

37. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

38. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and PS

39. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

40. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. PS is liable as the issuer of these statements.

41. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

42. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

43. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

44. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

45. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

46. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

47. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of PS within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of PS and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

51. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: June 6, 2022  **RIGRODSKY LAW, P.A.**

By: <u>*/s/ Gina M. Serra*</u>
Gina M. Serra
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: gms@rl-legal.com

*Attorneys for Plaintiff*